

AO 91 (Rev. 11/11) Criminal Complaint      AUSA Jennie Levin (312) 353-5372

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DARAYL DAVIS

CASE NUMBER:
UNDER SEAL



**FILED**
JAN 11 2018
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**18CR 025**
**MAGISTRATE JUDGE COLE**

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about June 12, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1343 | for the purpose of executing the scheme to defraud, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an electronic payment file authorization from the Federal Retirement Thrift Investment processing unit to the United States Treasury located in a different state, authorizing payment in the amount of approximately $100,000 from Investor A's Federal Retirement Thrift Savings account to Financial Assurance Corporation, which payment represented one of Investor A's investments with the defendant; |

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

_BRENT E. POTTER_
Special Agent, Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: January 11, 2018

_Judge's signature_

City and state: Chicago, Illinois

JEFFREY COLE, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT  
NORTHERN DISTRICT OF ILLINOIS  } ss

## AFFIDAVIT

I, BRENT E. POTTER, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed for over 20 years. My current responsibilities include the investigation of white-collar crime, including mail, wire, and bank fraud, among others.

2. This affidavit is submitted in support of a criminal complaint alleging that DARAYL DAVIS has violated Title 18, United States Code, Section 1343. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging DAVIS with wire fraud, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Summaries of emails, including relevant quotations, are based on copies of emails, as well as additional information provided by cooperating victims, and my training, experience, and involvement in the investigation.

### FACTS SUPPORTING PROBABLE CAUSE

*Background of the Investigation*

4. As explained in more detail below, the FBI is investigating DAVIS for his participation in a wire fraud scheme. More specifically, beginning no later than September 2010, DAVIS, doing business as Financial Assurance Corporation ("FAC") and Affluent Advisory

Group ("AAG"), collected over approximately $4 million dollars from approximately 14 different investor victims by falsely telling them they were buying risk-free investments, yielding between 6% and 10% annual interest. Contrary to his representations to the investor victims, however, DAVIS did not make any investments whatsoever on behalf of any of the 14 investor victims. Instead, DAVIS deposited the money he received from the investor victims into multiple bank accounts held in the names of FAC and AAG – all of which he opened and controlled as sole signatory. Instead of investing his victims' money, DAVIS used his victims' money to pay for his own personal expenses, including the rental of a luxury house and luxury cars, membership in exclusive travel clubs, and personal credit card payments.

*Relevant Information on DAVIS, FAC, and AGG*

5.  DAVIS is the Chief Executive Officer of FAC and AAG, which were incorporated in the state of Delaware in July 2000 and October 2012, respectively. DAVIS opened multiple bank accounts under the names FAC and AAG at Bank of America, Wells Fargo, and Sun Trust Bank.

6.  AAG operates a website using the web address "affluentadvisorygroup.com," which states "Affluent Advisory Group LLC is an independent employee-owned Wealth Management Firm. It manages investment portfolios on a fee-only, discretionary and non-discretionary basis for individuals, families, business, institutions and foundations." The website also states, "Founder and CEO, Darayl D. Davis, has 15 years' experience working in the financial markets with Global leaders through various financial cycles and economic conditions."

7.  Until recently, FAC also had a website that listed DAVIS as the CEO and stated that FAC offered investment advisory services, as well as securities brokerage.

2

8. According to FINRA, DAVIS has not been registered as a securities broker/investment advisory since January 2009.

*DAVIS Defrauded Investor A*

9. The FBI initiated its investigation of DAVIS on or about April 5, 2017, in response to a complaint by Investor A and his/her spouse, both residents of Chicago. The same day, the FBI interviewed Investor A. During the interview, Investor A provided the FBI with several documents and e-mails related to his/her investment with DAVIS. Investor A is a retired U.S. Postal Service employee who had invested his/her retirement savings through the federal Thrift Savings Program ("TSP"). The TSP is an investment program for retirement savings run by the federal government for the benefit of federal employees. In or around June 2015, Investor A had approximately $200,799 in retirement savings invested through the TSP.

10. According to Investor A, Investor A was first introduced to DAVIS through his/her local church in approximately 2013. According to Investor A, DAVIS said that he worked as a financial advisor at FAC. In or around 2015, DAVIS told Investor A that DAVIS could "roll over" Investor A's TSP funds into an Individual Retirement Account ("IRA") through FAC. According to Investor A, DAVIS said the FAC IRA offered guaranteed protection against financial loss, in addition to annual interest payments of approximately 10%. According to Investor A, DAVIS told Investor A that any funds he/she invested through FAC would be held in the custody of Company A, a large, multinational, well-known life insurance company.

11. According to Investor A, DAVIS sometimes used email messages to communicate with Investor A and his/her spouse regarding the investment opportunity. According to records

3

provided by Investor A and obtained from Google,[1] on or about June 2, 2015, DAVIS used the Google email account darayldavis@gmail.com (the "Google Account") to communicate with Investor A and his/her spouse regarding the investment opportunity. Specifically, DAVIS sent an email from the Google Account to Investor A and his/her spouse that stated, "Your account offers you a guaranteed return of principle so [Investor A's] retirement savings are protected against losses."

12. According to Investor A, in response to DAVIS's assurances of a guarantee against loss of principal, as well as the 10% annual interest payment he promised, Investor A agreed to withdraw the entirety of his/her retirement funds invested through the TSP, totaling approximately $200,799, and transfer those funds to the management of DAVIS through FAC. According to Investor A, in June 2015, Investor A directed the TSP to transfer the entire amount contained in his/her TSP account to FAC.

13. According to records obtained from the U.S. Treasury, on or about June 12, 2015, the Federal Retirement Thrift Investment processing unit, located in Birmingham, Alabama ("FRTIB"), sent an electronic wire transmission to the U.S. Treasury facility, located in Kansas City, Missouri, authorizing payment of approximately $100,000 from Investor A's TSP account to FAC. According to U.S. Treasury records, on or about June 12, 2015, Treasury check number 4030 45670154 was issued to FAC in the amount of approximately $100,000.

14. According to records obtained from the U.S. Treasury, on or about June 19, 2015, the FRTIB sent an electronic wire transmission to the same U.S. Treasury facility authorizing payment of approximately $100,799 from Investor A's TSP account to FAC. According to U.S.

---

[1] On or about October 20, 2017, Magistrate Judge Jeffrey Cole authorized a warrant to search the Google email account darayldavis@gmail.com. *See* 17 M 519.

4

Treasury records, on or about June 19, 2015, Treasury check number 4030 45856802 was issued to FAC in the amount of approximately $100,799.

15. According to bank records from Sun Trust Bank, in mid-June 2015, DAVIS deposited $200,799 into Sun Trust Bank account # XXXX5478, held in the name of FAC ("FAC Account 1"). According to bank records from Sun Trust Bank, FAC Account 1 was opened by DAVIS in or around 2010 and DAVIS was the sole signatory on the account.

16. On or about July 1, 2015, DAVIS, using the Google Account, confirmed the receipt of Investor A's TSP funds. Specifically, DAVIS sent an email from the Google Account to Investor A that stated, "Attached for your records is a copy of the disbursement checks sent from the TSP. The two checks in the amount of $100,000 and $100,799.50 bring the rollover/deposit amount to $200,799.50. This total will be reflected in your initial contract statement."

17. On or about December 1, 2016, DAVIS, using the Google Account, sent Investor A and his/her spouse a purported investment statement from FAC. Specifically, DAVIS sent an email from the Google Account to Investor A and his/her spouse and attached a document titled "Financial Assurance Corporation Capital Preservation Plus 2016 Annual Statement." The purported investment statement covered the time period from June 27, 2015, through November 30, 2016, and falsely indicated that Investor A's investment with FAC had grown from approximately $200,799 to over $291,000 during that period of time, representing over 30% growth.

18. Contrary to DAVIS's representations to Investor A and his/her spouse, DAVIS never invested any of Investor A's money and instead used the investment funds to pay for his own personal and business expenses. According to Sun Trust Bank records for FAC Account 1, prior to DAVIS depositing Investor A's $200,799 in mid-June 2015, FAC Account 1 held a

5

balance of less than $3,000. According to bank records for the FAC Account, between mid-June 2015 and September 3, 2015, aside from a few deposits totaling approximately several hundred dollars, the only deposits DAVIS made into FAC Account 1 were the two deposits comprising Investor A's $200,799 in investment funds.

19. An analysis of FAC Account 1's bank statements shows that between mid-June 2015 and September 3, 2015, DAVIS spent all but approximately $15,000 of Investor A's money on his own personal expenses, including entertainment, food, and travel expenses. For example, FAC Account 1's bank records show that DAVIS spent $5,000 at Ford's Theater; $5,000 at the Bronze Buffalo Club, whose website describes it as "a member's only club for sportsmen [to] access the world's most inaccessible experiences"; and tens of thousands of dollars on food, travel and car rental, including approximately $8,000 at Enterprise Rent A Car. FAC Account 1's records also show that DAVIS used Investor A's money to write over $30,000 in personal checks.

20. To date, DAVIS has not returned any of Investor A's investment funds, including the principal or the purported returns.

## CONCLUSION

21.     Based on the above information, I respectfully submit that there is probable cause to believe that DARAYL DAVIS has violated Title 18, United States Code, Section 1343.

FURTHER AFFIANT SAYETH NOT.

_____
BRENT E. POTTER
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me on January 11, 2018.

_____
JEFFREY COLE
United States Magistrate Judge

7